UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  22-CV-81083-AMC

CRAIG ZOBEL,

        Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION REGARDING MOTIONS FOR SUMMARY JUDGMENT [ECF Nos. 19, 24]

This matter is before the Court on the parties' cross motions for summary judgment filed by Craig Zobel ("Plaintiff" or "Mr. Zobel") (ECF No. 19) and Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") (ECF No. 24). I have reviewed the parties' cross motions for summary judgment and Mr. Zobel's reply (ECF No. 25). Under the limited standard of review that governs this case, I find that the motions are ripe for disposition. For the reasons stated below, Plaintiff's Motion for Summary Judgment (ECF No. 19) should be **GRANTED**, Defendant's Motion for Summary Judgment (ECF No. 24) should be **DENIED**, and the Commissioner's decision should be **REVERSED AND REMANDED**.

## BACKGROUND

On August 20, 2016, Mr. Zobel filed an application for a period of disability and disability insurance benefits ("DIB"), alleging a disability onset date of May 4, 2014.

R. 171-172.[1] At the time of the alleged onset of his disability, Mr. Zobel was 54 years old. R. 171. Based on Mr. Zobel's earnings record, he acquired sufficient quarters of coverage to remain insured through December 31, 2019 ("date last insured" or "DLI"). R. 1450. Therefore, he must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. R. 1450.

Mr. Zobel's case was initially handled by Administrative Law Judge ("ALJ") Thomas J. Stanzi. R. 12-25. After holding two hearings, ALJ Stanzi issued an unfavorable decision on March 28, 2019. R. 12-25. The Appeals Council denied review of ALJ Stanzi's decision and Mr. Zobel appealed the Commissioner's decision in federal court. R. 1-3. On July 7, 2020, the Court remanded the case to the Commissioner with instructions to "consider the opinion evidence from the acceptable medical sources and other sources and specify the weight assigned the opinions; further evaluate Plaintiff's residual functional capacity; if necessary, obtain expert evidence; and issue a new decision" ("Court Remand Order"). R. 1433-36. Thereafter, the Appeals Council issued a separate remand order requiring the ALJ to:

- Give further consideration to the treating, non-treating, and non-examining source opinions pursuant to the provisions of 20 CFR 404.1527, particularly Dr. Kishor's treating source opinion, and explain the weight given to such opinion evidence. As appropriate, the ALJ may request the treating and non-treating sources provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant could still do despite the impairments through December 31, 2019 (20 CFR 404.1520b). The ALJ may enlist the aid and cooperation of the

---

[1] Citations preceded by "R." are to the administrative record filed at ECF No. 11.

claimant's representative in developing evidence from the claimant's treating sources.

- Give further consideration to the claimant's maximum RFC and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The ALJ will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence, the ALJ will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

("Appeals Council Remand Order").[2] R. 1442-46.

On August 18, 2021, ALJ Lissette Labrousse held an additional hearing. R. 1386-1405. The record contains the following facts adduced largely from Mr. Zobel's testimony at the August 18, 2021, hearing, his medical records, opinion evidence, and the testimony of a vocational expert ("VE").

Mr. Zobel was 61 years old when he testified at the hearing. R. 1390. He completed four or more years of college. R. 350. Mr. Zobel's disability report says he is disabled due to the following conditions: "(1) Duane's Syndrome Type 2 Strabismus,

---

[2] The Court Remand Order and the Appeals Council Remand Order are collectively referred to as the "Remand Orders."

keratoconus rt eye, (2) Corneal Scars from Herpes Zoster and Dry Eye Syndrome, (2) Exterior Common tendon pain at epicondle [sic] with typing, etc., (4) Stiff fingers, wrist and shoulder residual wrist fracture, (5) Hearing 'cocktail party syndrome' problem with filter noise, (6) Laryngeal Papillomatomis [sic] surgery recurrence expected, (6) Torn Exterior common tendon re-attached surgically, (8) Gout Foot Pain, (9) Right Lateral Sesamoidectomy foot pain." R. 349.

*Mr. Zobel's Testimony*

Mr. Zobel testified that he previously worked as an attorney for almost 30 years. R. 350, 1390. He closed his law practice about one month after falling off a ladder and sustained a fractured right wrist that was broken in several places as well as elbow injuries. R. 1390-91. Although he tried to work a little after the incident, he was unable to work due to his injuries, medical treatment, and other conditions. R. 1390. He had surgery on his elbow, but not his wrist. R. 1391-92. Instead of surgery on the wrist, he had his wrist put back in place and was told he would have arthritis in the wrist. R. 1391. His prescribed physical therapy helped him regain some of the motion in his wrist. *Id.* He continues to have pain in his wrist and elbow. R. 1391-92.

He has difficulty using a knife to cut bread, using a handheld shower head, writing by hand, folding or hanging laundry, opening or sealing plastic bags, buttoning buttons, zippering zippers, opening jars, or using scissors due to pain. R. 1392. He is able to reach items in front of or above him, but he has trouble turning things or lifting any weight. R. 1392-93. He can use his right upper extremity on a limited basis, but not on a repetitive or continuous basis because the pain is limiting.

4

R. 1399. He is unable to type, write, or carry boxes. R. 1400. He can stand for short periods of time and can walk a very short distance (10-20 yards), but he cannot bear weight on his right foot for more than a few minutes due to pain related to gout and scar tissue from a surgery to remove a tendon in his right foot. R. 1394.

He further testified that his main impediment to working is his vision. R. 1399-1400. He has strabismus, otherwise known as Duane's Syndrome, which means his eyes do not focus together. R. 1394-95. He has blurred vision, double vision, and trouble reading because he loses his place when reading and the words get blurred together. R. 1395-96. He has scarring on his cornea due to shingles in one of his eyes in 2015.[3] R. 1395. He is near-sighted and does not know whether his side vision is impaired. R. 1395.  He was advised not to have surgery to remove the scars because of a high probability of recurrence of the shingles that could eliminate vision in his eye, and he was told not to get the shingles vaccines. R. 1396. He could not tolerate wearing specially made contact lenses due to his astigmatism, coning of the lens of his eye, and pain; he is able to wear other contact lenses but does not get good vision out of them. R. 1396-97. He also has dry eye with tearing, which causes further blurred vision. R. 1397-98.

He also testified that he had vocal cord surgery approximately five months after his ladder injury. R. 1393. He does not currently have vocal cord issues but can

---

[3] Mr. Zobel testified that the shingles was in his right eye (R. 1398), but some of his medical records state that the shingles was in his left eye (*see e.g.*, R. 1069). Neither side argues that the Court's analysis is affected by the eye which has the scarring.

have recurrences. R. 1393. Finally, he had a severe grand mal seizure in September 2016. R. 1399. He temporarily took medications for the seizure and has not had a recurrence despite ceasing the medication due to side effects. R. 1399.

*Medical Records[4]*

1. <u>Upper Right Extremity</u>

In May 2014, Mr. Zobel presented at Palm Beach Sportsmedicine & Orthopaedic Center complaining of pain in the right ribs, right wrist, and left knee after falling off of a ladder. R. 660. Dr. Kirvin diagnosed Mr. Zobel with a right distal radius fracture, rib contusion, and left knee internal derangement. R. 661. Dr. Kirvin inserted a hematoma block and performed close reduction on Mr. Zobel's right wrist. R. 661. Mr. Zobel received a short arm cast. R. 661. On June 2, 2014, Mr. Zobel reported right shoulder pain. R. 667. Dr. Kirvin noted that his right shoulder had a full range of motion. *Id.* Dr. Kirvin showed him how to properly use a sling. *Id.*

On June 11, 2014, Dr. Kirvin noted that Mr. Zobel's wrist looked clinically quite good, and x-rays showed that the wrist was healing. R. 692. On June 20, 2014, Dr. Kirvin noted that Mr. Zobel's right shoulder had mild to moderate decreased range of motion in each direction, particularly abduction, but that he could force him into much more abduction than he would actively perform. R. 670.

---

[4] Mr. Zobel's medical records are extensive. Thus, I only summarize the relevant non-duplicative medical records and opinion evidence specifically cited by the parties or the ALJ.

Mr. Zobel began physical therapy for his right wrist and shoulder in June 2014. R. 700-701. He continued physical therapy through August 25, 2014. R. 766. On August 25, 2014, Mr. Zobel's physical therapist, Holly Whitford, stated that he was responding well to treatment for the right shoulder and wrist, he demonstrated near full shoulder strength in all planes as long as resistance was applied proximal to the elbow and full shoulder passive range of motion with [some tightness] at the end range, and wrist range of motion and strength were progressing appropriately as well, but that he continued to have elbow pain. R. 766, 1457.

On August 26, 2014, Mr. Zobel had an MRI of his elbow which revealed common extensor tendinosis and high-grade partial-thickness tear. R. 831-34. On September 5, 2014, an x-ray of Mr. Zobel's wrist showed a well healed aligned distal radius fracture. R. 840. Thereafter, Mr. Zobel attended approximately seven occupational therapy sessions between September 8, 2014, to September 22, 2014, but discontinued therapy before elbow surgery. R. 793, 805, R. 1458. On October 7, 2014, Mr. Zobel had right elbow tenotomy, debridement of tendinosis, extensor tendon repair surgery. R. 876.

In September 2020, after the DLI, Mr. Zobel complained of intermittent right elbow and foot pain. R. 1679. Dr. Evan Pecks examined Mr. Zobel's right elbow, wrist, and hand and found a well healed lateral incision, positive tenderness to palpation of the common extensor tendon origin(s) and lateral epicondyle(s); 4/5 strength of wrist extension (otherwise normal) and pain with resisted wrist extension. R. 1681-82, 1458. Mr. Zobel's Cozen's test was positive, but the reverse Cozen's test was negative,

as was the elbow valgus stress test and elbow varus stress test, and the range of motion for his elbow, wrist, and hand were all within normal limits. R. 1681-82, 1458.

2. <u>Vison</u>

Between July 21, 2015, and September 2015, Mr. Zobel was seen at Bascom Palmer Eye Institute for probable zoster and reports of lymphadenopathy. R. 1053. The impression notes stated that Mr. Zobel had a history of Duane's syndrome of the left eye, myopia in both eyes, and a history of "HPV of the vocal cords." R. 1053, 1100. In November 2015, Mr. Zobel visited Dr. Winegar to be fitted for special contact lenses due to his irregular astigmatism. R. 1106. Mr. Zobel ultimately had discomfort with the special contact lenses and was unable to use them. R. 1009, 1115. On December 3, 2015, Dr. O'Brien performed a punctal occlusion by plug on Mr. Zobel's left eye because his dry eye syndrome was refractory to conservative medical management R. 1063. On December 14, 2015, Dr. Craig McKeown confirmed that Mr. Zobel developed a corneal scar on his left eye, which was causing blurred vision and distortion and noted that the scar, in combination with his underlying ocular motility disorder, make reading difficult. R. 1112. Dr. McKeown did not recommend strabismus surgery because he did not think it would improve any component. R. 1084.

On July 21, 2016, Mr. Zobel visited Dr. Paul Rosenblum regarding complaints of diplopia and corneal scarring. R. 1037. Dr. Rosenblum's impression notes found corneal scarring, Duane's Syndrome type two, and keratoconus. *Id.* On August 5, 2016, Mr. Zobel followed-up with Dr. Hilda Capo regarding his vision impairments,

8

including his Duane's Syndrome, torticollis, and herpes zoster keratitis of the left eye. R. 1069, 1129. Dr. Capo noted that Mr. Zobel's strabismus was gradually worsening in the left eye and that he was having blurred vision, eyestrain, and difficulty reading. R. 1129. However, she did not recommend strabismus surgery due to good alignment in primary position when fixating at a distance. R. 1132.

3. Lower Right Extremity

Four years prior to his alleged onset date, in 2010, Mr. Zobel had sesamoidectomy surgery performed on his right foot. R. 889. In January 2018, Mr. Zobel presented to Atlantis Orthopaedics with left foot pain and elbow pain but declined physical therapy or an MRI for the elbow and the record does not show that he got an MRI of his left foot as recommended by the physician. R. 1354, 1453.

On October 29, 2015, Mr. Zobel was seen by Dr. Giovanni Spatola for right toe swelling and pain. R. 1009. His blood test results reflected uric acid levels above target levels for gout patients, but his uric acid levels reduced to normal levels shortly thereafter. R. 977, 1139. On November 30, 2015, Dr. Spatola noted that Mr. Zobel was in stable condition, but had problems including idiopathic gout and pain in the right joint, ankle, and foot. R. 1138. Records from the Cleveland Clinic state that Mr. Zobel was seen on February 29, 2016, for left foot and joint pain, but the notes stated that the issue was mechanical and not gout or inflammatory process.[5] R. 1136.

---

[5] The treatment notes from this visit are not included in the record. Instead, the visit is identified in summary fashion on a "Problems List."

*Opinion Evidence*

1. <u>Dr. Krishna Kishor</u>

Dr. Kishor is a board-certified ophthalmologist that examined and treated Mr. Zobel in August 2016 and January 2018. R. 1349-1352, 1365-69. On July 20, 2018, Dr. Kishor opined that Mr. Zobel's condition meets or equals the criteria in severity for a disability evaluation pursuant to the Listings of Impairments regarding "2.00 Special Senses and Speech – Adult." R. 1365. He opined that Mr. Zobel could never perform activities involving near acuity, far acuity, or accommodation; rarely perform activities involving depth perception and field of vision; frequently perform activities involving color vision; and can avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, and approaching people or vehicles. R. 1366. He further opined that Mr. Zobel's combination of visual impairments severely limit his ability to read, write, use a computer, or engage in other activities that require clear vision. R. 1368.

He explained the visual difficulties that stem from Mr. Zobel's Duane's Syndrome, corneal scarring in the eye due to shingles, keratoconus, astigmatism, and dry eye syndrome. *Id.* He opined that the changes to the shape of Mr. Zobel's corneas and lenses are not correctible, and that surgery is not an option for Mr. Zobel due to a risk of reactivating the shingles virus that could cause catastrophic scaring. *Id.* Dr. Kishor explained that the tests used in the vision findings that he reviewed do not address the combination of visual impairments that are problematic for Mr. Zobel, such as the Snellen Chart test. *Id.* He opined that Mr. Zobel's combination of visual

10

impairments preclude him from any work that requires reading, using a computer, using a cash register, pricing, reviewing lists or menus, using a map, navigating, driving in unfamiliar areas, viewing numbers, perusing sales materials, or working with machinery because he did not have stable or reliable vision as required by most activities of daily living. R.1365-69.

In a non-disability proceeding in August of 2016, Dr. Kishor testified regarding Mr. Zobel's same conditions and also opined that Mr. Zobel would require frequent breaks to rest his eyes while reading, his vision declined overtime, and he should not drive. R. 516-534; 647-654.

### 2. Dr. Michelle Dompenciel

Dr. Dompenciel is a neurologist who treated and examined Mr. Zobel after he had a seizure on September 19, 2016. R. 1319-27, 1359. On September 29, 2016, Dr. Dompenciel performed neurological and physical examinations of Mr. Zobel and did not note abnormal findings. R. 1321-22. On May 23, 2018, she completed a Florida Department of Highway Safety and Motor Vehicle Medical Report. R. 1357-1359. Her report indicated that she began treating Mr. Zobel on September 29, 2016, and last saw him on May 23, 2018. R. 1357. She also noted that Mr. Zobel was temporarily put on medication after his seizure, but that he no longer takes medication or receives treatment, and has not had a recurrence. R. 1357-59. She further noted that he cannot type due to a history of wrist/tendon injuries and that his walking is limited because of gout and sesamoiditis, but that these conditions do not interfere with his

ability to drive. R. 1358. She opined that Mr. Zobel can safely operate a motor vehicle. R. 1359.

### 3. Dr. Lefkowitz

Dr. Lefkowitz is an ophthalmologist that reviewed Mr. Zobel's medical records. R. 1241-44. He noted that Mr. Zobel has pain in his elbow if he types more than a few sentences, lifts more than ten pounds, or uses his right hand on a repetitive basis. R. 1244. He opined that Mr. Zobel's injuries and illnesses, together with the necessary surgeries, treatments, and physical therapy, have dramatically and continuously interfered with Mr. Zobel's practice of law from May 4, 2015, to present, such that he has been incapable of significant gainful employment. *Id.* He further opined that Mr. Zobel will continue to be incapable of significant gainful employment in the legal profession or any other work that requires reading or use of a computer for the remainder of his work life expectancy. *Id.*

### 4. VE Donna Taylor

VE Taylor conducted a multi-day vocational evaluation of Mr. Zobel on July 12, 2016, and August 26, 2016. R. 1223-26. To conduct her evaluation, she reviewed Mr. Zobel's 2013-2016 tax returns and his medical records from Dr. McKeown, Dr. Rosenblum, Dr. Kirvin, Dr. O'Brien, Dr. Burns, Dr. Lefkowitz, and Dr. Kishor. R. 1223. She stated that she attempted to administer several vocational tests to Mr. Zobel but that he was unable to do them because of his inability to read. R. 1224. She administered the reading section of the Wide Range Achievement Test – Fourth Edition ("WRAT-IV"), which contained letters and words in 16 font and bold print.

12

R. 1225. Mr. Zobel was unable to consistently read letters of words and also had difficulty reading the words. R. 1225. He read approximately 50% of the 70 words correctly. R. 1225. She opined that Mr. Zobel could not work as an attorney because he is unable to frequently reach, handle and finger on a repetitive basis due to his visual impairments. R. 1225. She further opined that although Mr. Zobel had some transferable skills, his skills could not transfer to an occupation that requires no reading or repetitive use of the dominant hand. R. 1225. She concluded that Mr. Zobel did not have any transferable skills, given his impairments, that would allow him to earn substantial gainful activity. R. 1225.

  5.  <u>Holly Whitford</u>

On July 18, 2018, physical therapist Ms. Whitford completed a residual functional capacity assessment and opined that Mr. Zobel can rarely lift and carry less than 10 pounds and can never lift and carry 10-50 pounds. R. 1362. She further opined that Mr. Zobel can occasionally stoop, crouch, and squat, and that he has a limited ability to stand and walk for more than very brief periods or short distances due to stiffness and pain in his right foot. R. 1362, 1364.

  *Vocational Expert Testimony*

At the hearing, the ALJ heard testimony from VE Jeannie Deal. The VE described Mr. Zobel's past relevant work as a lawyer as generally sedentary, but heavy as performed. R. 1401. The ALJ asked the VE whether an individual of Mr. Zobel's age, education, and work history with the following limitations could perform Mr. Zobel's past relevant work:

> [T]he individual can perform at the medium exertional level, can
> frequently push, and pull, and handle with the right upper extremity,
> can never climb ladders, ropes, or scaffolds, must avoid exposures to
> workplace hazards such as unprotected heights, moving mechanical
> parts, operating heavy machinery. The individual can occasionally read
> fine print, and can use depth perception, and fields of vision
> occasionally.

R. 1401. The VE responded that the hypothetical claimant could not perform

Mr. Zobel's past work but could perform other jobs.[6] R. 1401-02. The VE testified that

the hypothetical claimant would be able to perform the following jobs at the medium

exertional level with the limitations stated by the ALJ: general helper, laundry

worker, and industrial cleaner. R. 1402.

In the second hypothetical posed to the VE, the ALJ asked her to assume an

individual with the same functional abilities as the first hypothetical, except that the

hypothetical claimant could perform at the light exertional level. R. 1402-03. After

acknowledging that the hypothetical claimant could not perform Mr. Zobel's past

relevant work based on previous testimony, the ALJ asked the VE whether there

were "other jobs using transferrable skills where adjustment is not yet relevant, that

the individual could perform." R. 1403. The VE testified that there were not. *Id.*

---

[6] Specifically, the VE testified that the hypothetical claimant would not be able to
perform Mr. Zobel's past work "based on the near acuity." R. 1401. After the ALJ
clarified that she did not say near acuity, the VE confirmed that the ALJ said that
the hypothetical claimant could occasionally read fine print. R. 1402. The VE later
confirmed that she equated occasional reading of fine print with near acuity. R. 1403.

*ALJ's Decision dated September 22, 2021*

The ALJ found that Mr. Zobel did not engage in substantial gainful activity during the period from his alleged onset date, May 4, 2014, through his date last insured. R. 1452. The ALJ further found that Mr. Zobel had the following severe impairments that significantly limit his ability to perform basic work activities as required by SSR 85-28: right wrist fracture, healed; right elbow tendinosis, status post tendon repair; herpes zoster epithelial keratitis in the left eye; Duane's syndrome of the left eye; dry eye syndrome; myopia, and astigmatism. R. 1452. The ALJ also found that Mr. Zobel had the following non-severe impairments that do not significantly limit the physical or mental ability to do basic work activities: dysphonia, status post laryngeal papillomatosis; seizures; history of right sesamoidectomy; and gout with joint pain complaints. R. 1452-53.

Nevertheless, the ALJ found that Mr. Zobel did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1, through the DLI. R. 1454.

Upon considering the objective medical evidence, the opinions of record, and Mr. Zobel's subjective allegations, the ALJ concluded that Mr. Zobel had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR § 404.1567(c) with the following limitations:

> frequently push and pull and handle with the right upper extremity; never climb ladders, ropes, scaffolds; must avoid exposure to workplace hazards such as unprotected heights, moving mechanical parts, operating heavy machinery; occasionally read fine print, and; use depth perception and field of vision occasionally.

15

R. 1454. Based on his RFC, the ALJ found that Mr. Zobel was unable to perform his past relevant work through the DLI. R. 1461. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Zobel could have performed given his age, education, work experience, and RFC. R. 1462. Specifically, jobs as a general helper and laundry worker. R. 1462-63. Accordingly, the ALJ found that Mr. Zobel was not under a disability at any time from the alleged onset date through the DLI and denied Mr. Zobel's request for benefits. R. 1463.

The Appeals Council denied his request for review on July 19, 2022, rendering the ALJ's decision the "final decision." R. 1377-82. Mr. Zobel filed this action in the District Court, requesting judicial review of the ALJ's decision. ECF No. 1.

*Mr. Zobel's Claim*

In his Motion for Summary Judgment, Mr. Zobel seeks reversal of the ALJ's decision that he is not disabled on the grounds that (1) the ALJ improperly weighed or rejected opinion evidence from Dr. Kishor, Dr. Lefkowitz, VE Taylor, and Dr. Dompenciel and (2) the ALJ's RFC findings regarding Mr. Zobel's ability to "occasionally read fine print" and perform medium work are vague and unsupported. ECF No. 19. Mr. Zobel requests that the Court order the Commissioner to grant benefits, or, in the alternative, to remand the case for further proceedings under the fourth sentence of 42 U.S.C. § 405(g). *Id.* at 28-29.

## STANDARD OF REVIEW

This Court's review of the factual findings in disability cases is limited to an inquiry into whether substantial evidence exists to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Although factual findings enjoy such deference, a court is free to review the ALJ's legal analysis and conclusions *de novo*. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

### I.   The Five Step Framework

A person who applies for social security disability benefits must prove his disability before being entitled to those benefits. *See* 20 C.F.R. § 404.1512. In determining disability, the ALJ considers a five-step evaluation process. *See* 20 C.F.R. § 404.1520. First, the claimant must prove he is not currently engaged in substantial gainful activity. *Id.* Second, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work

17

activities . . ." *Id.* Third, the claimant must show he is disabled by proving that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* Before considering step four, the ALJ must determine the claimant's RFC, meaning his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *Id.*; 20 C.F.R. § 404.1545. At step four, the claimant bears the burden of proving that he does not have the RFC to perform past relevant work. 20 C.F.R. § 404.1520. If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's RFC, age, education, and past work experience, that he is capable of performing other work. *Id.* If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Id.*

## II.   Whether the ALJ Erred by Improperly Weighing the Opinion Evidence

Mr. Zobel argues that the ALJ failed to comply with the Remand Orders because she rejected opinion evidence that she was required to weigh in accordance with 20 C.F.R. § 404.1527 and ignored the directions to seek additional evidence or further clarification of the opinion evidence pursuant to 20 C.F.R. § 1545 and Social Security Ruling 96-8p.[7] ECF No. 19 at 13. Instead, Mr. Zobel argues, the ALJ

---

[7] The parties agree that 20 C.F.R. § 404.1527 applies to Mr. Zobel's claim because the claim was filed before March 27, 2017. ECF Nos. 19 at 13, n.10; 24 at 5, n.2. Section 404.1527 was rescinded with respect to claims filed on or after March 27, 2017.

substituted her lay interpretation of the medical evidence in place of the opinion evidence and made several unsupported findings. Mr. Zobel further argues that the ALJ improperly selectively chose, and mischaracterized, portions of the evidence. *Id.* Finally, Mr. Zobel argues that the ALJ failed to build a logical bridge between the evidence and her conclusions. *Id.* Specifically, Mr. Zobel challenges the ALJ's evaluation of opinion evidence from Dr. Kishor, Dr. Lefkowitz, and VE Taylor regarding Mr. Zobel's vision and from Dr. Dompenciel regarding Mr. Zobel's physical limitations, as discussed further below. *Id.* at 13-27.

A. <u>Standards in Evaluating Medical Opinion Evidence</u>

The Social Security Regulations outline how medical opinions are evaluated. *See* 20 C.F.R. § 404.1527(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.* at § 404.1527 (a)(1). In rendering this determination, the ALJ must consider: (1) if the doctor has examined the claimant; (2) the length, frequency, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; (5) the doctor's area of specialization and (6) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c). While the ALJ must consider each factor, the

ALJ need not explicitly address them in his or her decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). "Therefore, when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' [the Court] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel*, 631 F.3d at 1179 (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

"A treating physician's medical opinion must be given 'substantial or considerable weight unless 'good cause' is shown to give it less weight." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 (11th Cir. 2018) (first citing *Winschel*, 631 F.3d at 1179; then citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). It is well settled that if an ALJ concludes that a treating physician's opinion should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing "good cause" for discounting it. *Hargress*, 883 F.3d at 1305. Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating

20

physician's own medical records. *Id.* The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as the ALJ articulates a specific justification for it." *Hunter v. Soc. Sec. Admin.*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

      B. <u>Dr. Kishor's Opinion</u>

In his motion, Mr. Zobel challenges the factors the ALJ considered when weighing Dr. Kishor's opinions, the ALJ's alleged failure to consider consistencies in the record, and the ALJ's mischaracterization of certain evidence. ECF No. 19 at 15-21. I construe these arguments as a request to find that the ALJ failed to articulate good cause for assigning little weight to Dr. Kishor's opinions and, because I find that the ALJ did not sufficiently explain her reasons for discounting Dr. Kishor's opinions, I recommend that the case be remanded. *See Cain v. Comm'r, Soc. Sec. Admin.*, 777 Fed. Appx. 408, 410 (11th Cir. 2019) (holding that the ALJ "committed reversible error by failing to state with particularity and clearly articulate good cause for discrediting [the treating physician's] specific, determinative opinions") (citations omitted); *see also Trejo v. Kajakazi*, No. 20-CV-60539, 2021 WL 3709478, at *8 (S.D. Fla. Aug. 10, 2021); *Shelga Leah F. v. Comm'r, Soc. Sec. Admin.*, No. 18-CV-00142, 2020 WL 13533701, at *5 (N.D. Ga. Mar. 3, 2020).

The ALJ clearly states that she accorded "little weight" to Dr. Kishor's overall assessments because "they are not well supported by or consistent with the medical and other substantial evidence in the record." R. 1459. However, the ALJ fails to sufficiently articulate her reasons for discounting some of Dr. Kishor's opinions.

"While the Court is not tasked with 'decid[ing] the facts anew, reweigh[ing] the evidence, or substitut[ing its] judgment for that of the [Commissioner] . . . where the 'the medical evidence does not conclusively counter' the treating doctor's opinion, good cause does not exist for discounting that physician's opinion.'" *Baez v. Colvin*, No. 14-21862-CIV, 2016 WL 11110181, at *9 (S.D. Fla. Mar. 2, 2016) (J. Goodman) (citations omitted), *report and recommendation adopted*, 2016 WL 11110196 (J. Martinez).

The arguments raised in Mr. Zobel's motion compel the Court to evaluate whether the ALJ adequately considered Dr. Kishor's opinions regarding Mr. Zobel's severely limited ability to read and his inability to perform work that requires reading. "Where an ALJ fails to address every pertinent opinion from a treating physician, then the decision to give that opinion less than controlling weight cannot be supported by good cause." *Shelga Leah F.*, 2020 WL13533701, at *5 (finding the ALJ failed to provide good cause for discounting a treating physician's opinions where ALJ failed to address or contradict a pertinent opinion and insufficiently explained how other opinions were inconsistent with the record evidence).

The ALJ's decision is silent regarding the weight given to Dr. Kishor's opinions that Mr. Zobel is severely limited in his ability to read due to his visual impairments and that he is unable to perform work that requires reading. Dr. Kishor thoroughly discussed Mr. Zobel's visual impairments and explained the basis for his opinion that Mr. Zobel's visual impairments "severely limit his ability to read, write, use a computer, or engage in other activities that require clear vision." R. 1368. Dr. Kishor further opined that Mr. Zobel's "combination of visual impairments preclude him

from any work that requires reading" in part because he "simply does not have stable or reliable vision as required by most activities of daily living." R. 1369. Dr. Kishor also opined that if Mr. Zobel needed to read something, Dr. Kishor expects he would need to rest his eyes frequently. R. 401.

Although, the ALJ's decision acknowledges these opinions, and even appears to at least partially credit Dr. Kishor's opinions given her finding that Mr. Zobel is not capable of performing his past relevant work "due to the reading requirements," the ALJ fails to explain her reason for discounting, or declining to consider, Dr. Kishor's opinions regarding the severity of Mr. Zobel's reading limitations.

The reasons the ALJ provides for discounting Dr. Kishor's overall assessments about Mr. Zobel's vision do not sufficiently explain why she discounted Dr. Kishor's opinions that Mr. Zobel has a significant reading limitation and is precluded from performing work that requires reading. Because only two of the reasons provided by the ALJ for discounting Dr. Kishor's opinions could possibly be construed as applying to his opinions regarding Mr. Zobel's reading limitations, only those two reasons are discussed.

First, the ALJ found that Dr. Kishor's opinion regarding Mr. Zobel's "decline in vision" was inconsistent with Mr. Zobel's visual acuity ("VA") and field of vision findings. However, Mr. Zobel's VA and field of vision findings do not contradict Dr. Kishor's assessment that Mr. Zobel has a significant reading limitation that precludes him from work that requires reading. Notably, Dr. Kishor explained, at length, why the Snellen Chart test, which was used to ascertain the VA and field of

vision findings relied upon by the ALJ, did not accurately reflect Mr. Zobel's severe

reading limitations:

> The tests set forth in the vision listings that I am familiar with and those
> I reviewed do not address the combination of visual impairments that
> are problematic for Mr. Zobel. For example, the Snellen test is not an
> indicator of Mr. Zobel's ability to read. The test focuses on the
> identification of individual letters in isolation. The brain can work hard
> and sometimes correctly guess at the identification of a single letter by
> studying its shape with repeated passes in unrestricted time. However,
> the brain cannot perform that task reliably with words since multiple
> letters are strung closely together. With reading the task becomes even
> more problematic as it requires attempting to decipher multiple words
> strung together in sentences. Mr. Zobel does not have coordinated
> movement of the eyes. As he tries to move from letter to letter and word
> to word the muscles strain trying to achieve focus. **The task of reading
> requires enormous concentration and focus for Mr. Zobel well
> beyond what he is able to perform given his combination of
> visual infirmities**.

R. 1368-69 (emphasis added). While the ALJ may have determined that the VA and

field of vision findings did not support Dr. Kishor's opinions regarding Mr. Zobel's

reading limitations, the ALJ's failure to explain how the findings were inconsistent

with Dr. Kishor's opinions renders it impossible for the Court to determine whether

she had good cause to discount the opinions on this basis. *See Shakeel v. Kijakazi*,

No. 20-cv-01131, 2021 WL 5827206, at *6 (N.D. Ala. Dec. 8, 2021) (citing *Simon v.

Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021) ("[I]f an ALJ discounts

a physician's opinion because it conflicts with other findings, the ALJ must explain

how the 'findings are genuinely inconsistent' with the medical expert's opinion.").

Therefore, I find that the ALJ's finding that the VA and field of vision findings are

inconsistent with Dr. Kishor's opinion regarding Mr. Zobel's decline in vision is

inadequate to establish good cause for discrediting Dr. Kishor's opinions regarding Mr. Zobel's reading limitations.

Second, the ALJ found that Dr. Kishor's assessments were "overly restrictive" when considering Mr. Zobel's "ability to navigate airports when traveling… and his ability to drive." R. 1459. Even assuming the record supports the ALJ's statement that Mr. Zobel is able to perform these activities, this undeveloped anecdotal evidence does not justify disregarding Dr. Kishor's opinions that Mr. Zobel has a severely limited ability to read or perform work that requires reading; nor does it amount to a "good reason" to discredit Dr. Kishor's opinions overall. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). Therefore, I find a lack of good cause for the ALJ giving Dr. Kishor's opinions less than controlling weight on this basis.

Notably, the ALJ's references elsewhere in her opinion do little to clarify the weight she accorded Dr. Kishor's opinions regarding Mr. Zobel's reading limitations. For example, she discounts Dr. Lefkowitz's opinion regarding Mr. Zobel's inability to perform work that requires reading because "Dr. Kishor and the claimant's testimony showed that the claimant was not entirely precluded from being able to read." R. 1460. However, as discussed above, Dr. Kishor likewise opined that Mr. Zobel was incapable of performing work that required reading. To the extent the ALJ partially credited aspects of Dr. Kishor's opinions regarding Mr. Zobel's reading limitations and discredited others, her reasons for doing so should have been clearly articulated.

*See Smith v. Colvin*, No. 13-00275-N, 2014 WL 518057, at *3 (N.D. Ala. Feb. 10, 2014) (citing *Winschel*, 825 F.3d at 1179).

While the ALJ may have had a reason for rejecting Dr. Kishor's findings regarding Mr. Zobel's visual limitations, including his reading limitations, the Court cannot affirm simply because some rationale may have supported the ALJ's decision. *Winschel*, 631 F.3d at 1179 (citing *Owens*, 748 F.2d at 1516). "Without an understanding of the ALJ's reasoning, and at least *some* explanation of what and how the opinions are unsupported by or inconsistent with the record, the undersigned would be forced to supplant its judgment for that of the ALJ and reweigh the evidence." *Trejo*, 2021 WL 3709478, at *8 (citing *Winschel*, 631 F.3d at 1178). The Court is not permitted to do so. Because the ALJ did not sufficiently address or explain why Dr. Kishor's opinion was entitled to less weight regarding Mr. Zobel's reading limitations, her decision to accord Dr. Kishor's opinion less than full weight is not supported by good cause. *Shelga Leah F.*, 2020 WL 13533701, at *5.

Any argument by the Commissioner that any error by the ALJ in weighing Dr. Kishor's opinions is harmless error is unavailing. As Mr. Zobel points out later in his motion, the ALJ ultimately found Mr. Zobel capable of performing jobs that require the following reading ability:

> Language: Level 1 - READING: Recognize meaning of 2,500 (two- or three-syllable) words. **Read at rate of 95-120 words per minute**. Compare similarities and differences between words and between series of numbers.

DOT § 522.686-014, 1991 WL 674298 (general helper); DOT § 361.684-014, 1991 WL 672983 (laundry worker) (emphasis added).[8] Although, the parties disagree about whether this is an actual requirement for the jobs the ALJ found Mr. Zobel capable of performing, the Court is unable to conclude that the ALJ's lack of good cause for discounting Dr. Kishor's opinions regarding Mr. Zobel's reading limitations constitutes harmless error. *Compare Cain*, 777 Fed. Appx at 410 (finding ALJ "committed reversible error by failing to state with particularity and clearly articulate good cause for discrediting [treating physician's] specific, determinative opinions"), *with Newberry v. Comm'r, Soc. Sec. Admin.*, 572 Fed. Appx. 671, 672 (11th Cir. 2014) (holding that even if an ALJ "erroneously failed to explicitly assign weight to and discuss every aspect of [a treating physician's] opinion" the error was harmless because it was "still clear that the ALJ's rejection of the portions of [the treating physician's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantial evidence").

Accordingly, the case should be remanded with instructions for the ALJ to weigh Dr. Kishor's opinions on Mr. Zobel's reading limitations, more fully articulate her reasons for crediting or discrediting Dr. Kishor's opinions, and determine whether any limitations that she finds supported in Dr. Kishor's opinions impede Mr. Zobel's

---

[8] Notably, the record included evidence that Mr. Zobel was only able to read 50% of 70 letters and words given on the reading section of the WRAT-IV exam at a 16-point font and in bold print. R. 1225. It is unclear how this evidence may have affected the ALJ's disability decision because the ALJ did not discuss the reading requirements of the laundry worker and general helper jobs with the VE.

ability to perform the job of a laundry worker, general helper, or any other job that exists in significant numbers in the national economy.

Because I find remand appropriate, Mr. Zobel's other arguments regarding the ALJ's assessment of Dr. Kishor's opinions need not be addressed. *See Gonzalez Rodriguez v. Kijakazi*, No. 21-14280-CIV, 2023 WL 5206033, at *11 (S.D. Fla. Aug. 14, 2023) (J. Maynard) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986)).

C. <u>Dr. Lefkowitz's Opinion</u>

Mr. Zobel argues the ALJ improperly rejected Dr. Lefkowitz's opinions regarding Mr. Zobel's visual limitations because she failed to support her decision to discount Dr. Lefkowitz's opinion, failed to consider all of his opinions, mischaracterized the evidence, and failed to discuss statutory factors that undermine the weight she gave to his opinions. ECF No. 19 at 21-23. The Commissioner argues that the ALJ properly considered Dr. Lefkowitz's opinion and was not required to give good reasons for the weight given to the opinion because Dr. Lefkowitz was not a treating source. ECF No. 24 at 9-13.

Unlike a treating source opinion, the opinion of a non-examining physician, like Dr. Lefkowitz, is entitled "to no particular weight or deference." *See Baez*, 2016 WL 11110181, at *10 (first citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); then citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). However, the ALJ is still required to "state with particularity the weight [she

gave] to different medical opinions and the reasons therefore." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz*, 825 F.2d at 279).

Here, the ALJ stated that she gave Dr. Lefkowitz's opinions regarding Mr. Zobel's inability to perform significant gainful employment in the legal profession or any other work that requires reading or use of a computer "little weight" because the opinion was: (1) overly restrictive, (2) broad and vague (with no specificity as to the degree of restriction with reading or using a computer), and (3) the ultimate issue of the claimant's ability to work is a finding reserved to the Commissioner. R. 1460. In support of these findings, the ALJ stated that Dr. Kishor's assessments and Mr. Zobel's testimony showed that he was not entirely precluded from being able to read. The ALJ also referenced the results of VE Taylor's assessment which showed that Mr. Zobel was able to read 50% of 70 letters and words on the reading section of a WRAT-IV test. R. 1460.

Although the ALJ was not required to articulate "good cause" for discounting Dr. Lefkowitz's opinions regarding Mr. Zobel's visual limitations, I recommend that the ALJ be required to review her findings upon remand because her evaluation of these opinions was closely intertwined with her assessment of Dr. Kishor's opinions regarding Mr. Zobel's reading limitations. *See Trejo*, 2021 WL 3709478, at *9 (encouraging the ALJ to review her findings on remand regarding a non-treating examining physician because "the ALJ's rationale here is so conclusory that it is unclear whether the ALJ's Decision is supported by substantial evidence and whether the ALJ applied the proper legal standards"). Because the ALJ partially relied on

opinions by Dr. Kishor that she did not adequately address in her assessment of Dr. Lefkowitz's opinions regarding Mr. Zobel's visual limitations, the Court is unable to determine whether the ALJ's treatment of Dr. Lefkowitz's opinions is supported by substantial evidence. On remand, the ALJ may similarly conclude that Dr. Lefkowitz's opinions regarding Mr. Zobel's visual limitations are entitled to little weight. However, the ALJ's re-evaluation of Dr. Kishor's opinions on remand may impact the Court's analysis of the ALJ's treatment of Dr. Lefkowitz's opinions. Therefore, I find that the Court's analysis of the weight accorded to Dr. Lefkowitz's opinions regarding Mr. Zobel's visual limitations, before the ALJ re-assesses Dr. Kishor's opinions, would be premature at this time. Accordingly, I recommend that the ALJ be required to re-evaluate Dr. Lefkowitz's opinions regarding Mr. Zobel's reading limitations on remand.

Notably, however, I find no error in the ALJ's treatment of Dr. Lefkowitz's opinion with respect to Mr. Zobel's physical limitations. Although Mr. Zobel says he challenges the weight accorded to Dr. Lefkowitz's opinions, he only provides argument regarding the ALJ's consideration of Dr. Lefkowitz's opinions related to his visual limitations. To the extent Mr. Zobel argues that the ALJ either failed to address Dr. Lefkowitz's opinion regarding Mr. Zobel's physical limitations or that the ALJ's consideration of that opinion was improper, his conclusory statements insufficiently raise a challenge to the ALJ's consideration of Dr. Lefkowitz's opinion. Moreover, the record reflects that the ALJ considered Dr. Lefkowitz's opinion

regarding Mr. Zobel's physical limitations and Mr. Zobel's condition as a whole.[9] Because Mr. Zobel fails to support his argument that the ALJ improperly considered Dr. Lefkowitz's opinion regarding Mr. Zobel's physical limitations, and the record shows that the ALJ considered this opinion, I find no independent error on this basis.

      D. <u>VE Taylor's Opinion</u>

      Mr. Zobel argues that the ALJ did not properly weigh the opinion of VE Taylor because she failed to cite to any "genuine inconsistencies about the opinions regarding [Mr. Zobel's] vision" and failed to consider statutory factors that support VE Taylor's opinion. ECF No. 19 at 23-24. Mr. Zobel further argues that the ALJ was required to articulate specific reasons for discounting VE Taylor's opinions because the Remand Orders instructed the ALJ to reassess the opinions of both "medical and other sources." ECF No. 25 at 7.

      As argued by the Commissioner, however, VE Taylor is not considered a medical source and the ALJ was not required to give VE Taylor's opinions any particular weight. ECF No. 24 at 14; *see Fowler v. Comm'r of Soc. Sec.*, No. 16-CV-665, 2017 WL 9360889, at \*13 (M.D. Fla. July 3, 2017) (finding that two vocational experts were not medical sources and noting that "[a]lthough the ALJ should consider evidence from non–medical sources, the ALJ is not required to assign the evidence any particular weight") (citing *Farnsworth v. Soc. Sec. Admin.*, 636 Fed. Appx. 776,

---

[9] Indeed, the ALJ's decision specifically cited the pages of the record that contain Dr. Lefkowitz's purported opinion regarding Mr. Zobel's physical limitations. R. 1460.

784–85 (11th Cir. 2016)), *report and recommendation adopted*, 2017 WL 3298119 (M.D. Fla. Aug. 2, 2017). Instead, the regulations provide that an ALJ will consider an opinion from a nonmedical source and "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f).

Here, the ALJ accorded "very little weight" to VE Taylor's opinions that Mr. Zobel was unable to work as an attorney and did not have transferable skills to occupations that required no reading or repetitive use of the dominant hand. R. 1460. The ALJ gave this opinion very little weight because it was "inconsistent with and unsupported by the medical exams and evaluations of record" and her analysis of transferrable skills was "not consistent with the Social Security's rules and regulations" R. 1460.

I find that the ALJ did not error in assessing VE Taylor's opinions because she clearly considered the opinions and explained her reasons for giving the opinions very little weight. Importantly, even if the ALJ erred in assessing VE Taylor's opinions, any such error would be harmless because the ALJ's disability conclusion was not inconsistent with the opinions. *See Sarli v. Berryhill*, 817 Fed. Appx. 916, 917 (11th Cir. 2020) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) ("A harmless error—that is, one that does not affect the ALJ's ultimate decision—does not constitute a ground for reversal."). Indeed, the ALJ ultimately reached the same

conclusion as VE Taylor with respect to Mr. Zobel's inability to perform his past relevant work. R. 1461. In addition, the ALJ found that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Mr. Zobel] is 'not disabled,' whether or not the [he] has transferable job skills." R. 1462. Thus, even if the ALJ erred when she discredited VE Taylor's opinion that Mr. Zobel lacks transferable skills to occupations that require no reading or repetitive use of the dominant hand, any such error was harmless because it did not affect the ALJ's disability decision. *Sarli*, 817 Fed. Appx. at 917.

Finally, to the extent Mr. Zobel argues that the ALJ improperly rejected the WRAT-IV test results, that argument is not supported by the record. The ALJ's decision demonstrates that the ALJ did not reject the WRAT-IV test results, but rather partially relied on them to ascertain limitations related to Mr. Zobel's ability to read.[10] R. 1460. Accordingly, I find that the ALJ's consideration of VE Taylor's opinions does not independently provide a basis for remand.

---

[10] To the extent Mr. Zobel argues that the WRAT-IV test results were inconsistent with the ALJ's RFC finding that Mr. Zobel was capable of occasionally reading fine print (*see e.g.*, ECF No. 25 at 7), that argument more appropriately applies to whether the RFC was supported by substantial evidence than whether the ALJ properly considered VE Taylor's opinions.

E.  Dr. Dompenciel's Opinion

Next, Mr. Zobel argues that the ALJ did not properly weigh Dr. Dompenciel's opinions because she assigned the opinions various weight based on improper conjecture and failed to consider consistent medical and opinion evidence in the record. ECF No. 19 at 24-28. Specifically, Mr. Zobel challenges the ALJ's decision to discount Dr. Dompenciel's opinions regarding Mr. Zobel's physical limitations. Contrary to Mr. Zobel's arguments, however, the ALJ specifically articulated reasons for the weight given to Dr. Dompenciel's opinions and the reasons provided are substantially supported by the record evidence.

The ALJ assigned "great weight" to Dr. Dompenciel's opinion that Mr. Zobel is able to safely operate a motor vehicle, "little weight" to her opinion that Mr. Zobel could not type due to wrist/tendon injuries, "little weight" to her opinion that Mr. Zobel had limited walking abilities due to gout and sesamoiditis, and "some weight" to her opinion that these limitations did not affect Mr. Zobel's ability to drive. R. 1459. The ALJ gave Dr. Dompenciel's opinions regarding Mr. Zobel's typing and walking limitations little weight because her opinions appeared to reflect Mr. Zobel's medical history and subjective complaints rather than an objective assessment because Dr. Dompenciel previously noted that Mr. Zobel had a normal physical and neurological examination and because Dr. Dompenciel did not treat the conditions underlying these limitations. R. 1459.

The ALJ's reasons for discounting Dr. Dompenciel's opinions regarding Mr. Zobel's typing and walking limitations were adequate and amount to good cause. Moreover, the ALJ's stated reasons are supported by substantial evidence. First, Dr. Dompenciel did not provide any explanation for her conclusion that Mr. Zobel had typing or walking limitations due to his history of wrist/tendon injuries, gout, and sesamoiditis. For example, Dr. Dompenciel did not refer to any of the 287 pages of medical evidence that Mr. Zobel now argues supports her opinion.[11] *See* R. 1357-59; ECF No. 19 at 25. Second, her treatment notes do not suggest that she treated Mr. Zobel for these injuries or that she reviewed the records cited by Mr. Zobel to reach her opinion. Indeed, Dr. Dompenciel's treatment notes reflect at most isolated references to Mr. Zobel's history of these conditions, rather than an assessment of Mr. Zobel's overall condition. *See e.g.,* R. 1320, 1345 (listing "gout" under the header "PAST MEDICAL HISTORY" without any information regarding limitations related to Mr. Zobel's diagnosis); *see also* R. 1324, 1346-47 (listing "frozen shoulder," "lateral epicondylitis of elbow" and "other closed fractures of distal end of radius" under the header "Problem List as of 9/29/2016" without any information regarding limitations related to these diagnoses). Third, Dr. Dompenciel's own examination of Mr. Zobel, in 2016, resulted in normal physical and neurological examination findings and a finding that Mr. Zobel had: "normal muscle strength in both upper and lower

---

[11] Notably, the ALJ's decision reflects that the ALJ indeed considered several of the exhibits highlighted by Mr. Zobel in rendering her overall decision. *See e.g.,* R. 1453 (citing Exhibit Nos. 16F, 19F, 20F, 21F) and R. 1457 (citing Exhibit Nos. 4F, 5F).

extremities, no pronator drift, normal fine finger movements, normal reflexes, and normal sensory, with negative Romberg." R. 1458, 1322. Dr. Dompenciel's 2018 opinion does not indicate that she performed an updated examination of Mr. Zobel's physical abilities, much less that any examination reflected that Mr. Zobel had the identified limitations.

The ALJ was permitted to consider the supportability and consistency of Dr. Dompenciel's opinions regarding Mr. Zobel's physical limitations in light of her own treatment notes and the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3), (4). Based on this record, the ALJ reasonably concluded that Dr. Dompenciel based her opinion on Mr. Zobel's medical history and subjective complaints rather than on her own objective findings. Accordingly, I find that the ALJ sufficiently articulated good cause for discounting Dr. Dompenciel's opinions regarding Mr. Zobel's physical limitations and that the reasons she provided for discounting Dr. Dompenciel's opinions were supported by substantial evidence. *See Crawford*, 363 F.3d at 1159 (finding that substantial evidence supported the ALJ's decision to discount the opinion of the claimants treating physician where that opinion was "inconsistent with [the physician's] own treating notes, unsupported by the medical evidence, and appear[ed] to be based primarily on [the claimant's] subjective complaints of pain").

The Court has considered Mr. Zobel's remaining arguments, largely based on his perception that Dr. Dompenciel's opinion was consistent with other opinion or medical evidence in the record, and find that they do not merit discussion because

the ALJ's decision to discount Dr. Dompenciel's opinion is supported by substantial evidence. These arguments essentially ask the Court to re-weigh the evidence presented to and considered by the ALJ. The Court is not permitted to do so. The Court cannot substitute its judgment for that of the Commissioner. *Dyer*, 395 F.3d at 1210. So long as substantial evidence supports the ALJ's decision, the Court must affirm, "even if the proof preponderates against it." *Id.* Accordingly, I find that the ALJ's consideration of Dr. Dompenciel's opinion does not independently provide a basis for remand.

### III.  Whether the ALJ's RFC Findings are Vague and Unsupported

#### a.  Ability to "occasionally read fine print"

Mr. Zobel argues that the ALJ's RFC determination that he is able to "occasionally read fine print" is flawed because it is vague, unsupported, and inconsistent with the evidence regarding Mr. Zobel's reading abilities. ECF No. 19 at 27-28. The Court need not address these arguments, however, because they depend at least in part, on the ALJ's evaluation of Dr. Kishor's opinions, for which the Court has already recommended remand is appropriate. *See Trejo*, 2021 WL 3709478, at *9 (citing *Tavarez v. Comm'r of Soc. Sec.*, 638 Fed. Appx. 841, 849 (11th Cir. 2016)).

#### b.  Ability to Perform Medium Work

Mr. Zobel makes numerous fleeting arguments to challenge the ALJ's determination that he is capable of performing medium work. ECF No. 19 at 24-27. Upon review of his arguments and the record, none of his arguments are persuasive

because the ALJ considered and adequately addressed Mr. Zobel's physical limitations before finding that he is capable of performing medium work with the added limitations provided in the RFC.

An RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440 (citing 20 CFR § 404.1545(a)). The ALJ, alone, is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). "The ALJ must consider any statements by medical sources about what the claimant can still do and whether those statements are based on formal medical examinations." *Anido v. Saul*, No. 19-24349-CIV, 2020 WL 8812847, at *3 (S.D. Fla. Nov. 20, 2020) (J. Torres), *report and recommendation adopted*, 2021 WL 878986 (S.D. Fla. Mar. 9, 2021) (J. Williams). "The ALJ must also consider descriptions and observations of the limitations resulting from a claimant's impairments, including limitations that result from symptoms, such as pain." *Id.* (citing 20 C.F.R. § 404.1545(a)(3)). "Only 'acceptable medical sources' can provide medical opinions, which are 'statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of' a claimant's impairment, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment, and the claimant's physical or mental restrictions." *Id.* (citing 20 C.F.R. § 404.1527(a)(2)). An ALJ may not "make medical findings herself… but it is her responsibility to resolve conflicting medical opinions." *Id.* (first citing *Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992); then citing

*Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984)). The ALJ is not required to rely on medical opinion evidence to assess an RFC. *See Green v. Soc. Sec. Admin.*, 223 Fed. Appx. 915, 923-24 (11th Cir. 2007) (finding that the ALJ's RFC was supported by substantial evidence despite the ALJ discounting the only medical source opinion in the record where the remaining documentary evidence supported the ALJ's determination); *Anido*, 2020 WL 8812847, at *4-5 (rejecting claimant's argument that the ALJ "played doctor" in her evaluation of the record and erred in failing to rely on a medical source opinion to assess the claimant's RFC). As noted previously, "the burden lies with the claimant to prove [his] disability." *Green*, 2007 WL 1265988, at *6 (citing *Moore*, 405 F.3d at 1211).

"In determining the claimant's RFC, the ALJ 'must determine if the claimant is limited to a particular work level.'" *Green*, 2007 WL 1265988, at *6 (citing *Philips*, 357 F.3d at 1238). The medium work level requires the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). In determining that Mr. Zobel was capable of medium work, the ALJ adequately considered the relevant opinion evidence, medical records, and Mr. Zobel's testimony.

Notably, the record contains little evidence of significant functional limitations caused by Mr. Zobel's physical conditions. The only evidence cited by Mr. Zobel that discusses specific physical functional limitations is his own testimony and the opinion

of his physical therapist, Ms. Whitford.[12] However, the ALJ specifically discredited Ms. Whitford's opinion because it was inconsistent with and unsupported by the medical exams and evaluations of record, and because it partially conflicted with her own discharge summary in 2014. R. 1460. Notably, Mr. Zobel does not argue that the ALJ improperly weighed Ms. Whitford's opinion. Nor does he rebut the ALJ's finding that Ms. Whitford's opinion was inconsistent with and unsupported by the medical exams and evaluations of record. *See Del Carmen Duarte v. Saul*, No. 20-20131-CIV, 2020 WL 9048786, at *11 (S.D. Fla. Dec. 23, 2020) (J. Torres) ("[B]ecause Plaintiff failed to rebut this deficiency in [the physical therapist's] opinion or to explain in greater detail why the opinion should have been assigned more weight, there is nothing more to consider with respect to [the opinion]."), *report and recommendation adopted*, 2021 WL 1198297 (S.D. Fla. Mar. 30, 2021) (J. Williams) (citation omitted). In addition, the ALJ's decision reflects that she thoroughly considered Mr. Zobel's subjective complaints regarding his physical limitations in conjunction with the other evidence in the record.

Overall, the ALJ's decision reflects that she considered the entire record before making her RFC assessment, including Mr. Zobel's various activities, symptoms,

---

[12] As acknowledged by the ALJ, Ms. Whitford is a medical source that is not an acceptable medical source. *See Del Carmen Duarte*, 2020 WL 9048786, at *10 (collecting cases finding that a physical therapist "is not an acceptable medical source, meaning [the physical therapist's] opinion cannot be used to establish the existence of a medically determinable impairment").

treatments, precipitating and aggravating factors, objective medical findings and examinations, physician recommendations, and functional limitations. For example, the ALJ thoroughly discussed the results of several of Mr. Zobel's physical examinations. R. 1457-58. During this discussion, the ALJ acknowledged that some of the examinations of Mr. Zobel's right upper extremities showed decreased range of motion abilities and variable complaints of pain, but that others showed that he was responding well to treatment, his range of motion was progressing, and he had normal muscle strength in both upper and lower extremities. R. 1455, 1457-58. The ALJ also pointed to a specific instance in 2014 when Mr. Zobel reported moving 15 boxes, including some that weighed 50 pounds, without increased pain until after the exercise. R. 1458. Finally, the ALJ noted that after Mr. Zobel underwent surgery for his elbow in 2014, the record did not show that he participated in any additional physical therapy or further visits with a provider for right upper extremity complaints for six years. R. 1458.

Although the record indeed contains little affirmative evidence that Mr. Zobel is capable of lifting the weight required for medium work, the burden was on Mr. Zobel to show that he was disabled during the relevant period. The ALJ's discussion of the record substantially supports her findings that Mr. Zobel's subjective complaints and limitations appeared disproportionately high in comparison to the objective medical evidence and other substantial evidence in the record.

In addition, after explaining her analysis of the objective medical evidence, the medical opinion evidence, and Mr. Zobel's subjective allegations, the ALJ cited the evidence that supported her opinion that Mr. Zobel could perform medium work:

> In sum and based on the foregoing analysis of the objective medical evidence, the opinions of record, and in careful consideration of the claimant's subjective allegations, the undersigned finds that he had the above residual functional capacity to perform work at a medium exertional level with non-exertional physical restrictions reasonable and necessary to minimize symptoms and for safety concerns due to visual and right upper extremity impairments. The above residual functional capacity is supported by the generally normal physical/neurological exams (e.g., with Drs. Dompenciel and Spatola), no use of or medical necessity for any assistive devices for ambulation (despite a history of sesamoidectomy and sporadic/isolated complaints of pain in the feet, without treatment during the period at issue) . . . and resolution of right upper extremity pain in the wrist and elbow with physical therapy and surgery, with no further treatment after 2014.

> The claimant's residual functional capacity is consistent with his various activities with variable pain complaints, which included driving, traveling (e.g., to New York and Massachusetts), using a keyboard, lifting boxes, some that weighed 50 pounds prior to the elbow surgery, lifting groceries, and handling small items, such as a screwdriver to repair something at home (without pain) and a French knife (with pain), as per the physical therapy notes in 2014. After surgery, e.g., in 2016, the claimant had cooked a salmon that he had purchased at Costco, he made a salad for himself, and he had gone to the paint store before his MVA (Ex. 20F/12). These activities were done without mention of assistance from another person (such as the claimant's former wife) and these activities demonstrated that he was able to perform various activities that required the use of his upper extremities, especially the right one. Although the claimant's former wife had assisted with preparing and typing forms and other paperwork (e.g., questionnaires for disability purposes, Ex. 5E, 8E), the degree of limitation reported in such forms are not substantiated by the medical record, as a whole.

R. 1461. With respect to Mr. Zobel's physical abilities, "[n]othing more was required for the RFC to be supported with substantial evidence because 'the task of

determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *See Anido*, 2020 WL 8812847, at 5 (citing *Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. 2010)). The ALJ properly evaluated all of the evidence of record related to Mr. Zobel's physical limitations to reach the RFC finding. "Even though [Mr. Zobel] disagrees with the ALJ's conclusion, and would resolve the factual issues differently, the decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole." *See Garcia v. Saul*, No. 19-24220-CIV, 2020 WL 8513834, at *6 (S.D. Fla. Oct. 30, 2020) (J. Torres) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)), *report and recommendation adopted*, 2021 WL 535408 (S.D. Fla. Feb. 12, 2021) (J. Scola).

Finally, to the extent Mr. Zobel argues that the ALJ erred by not contacting his physicians to assess his RFC, that argument is unpersuasive. Contrary to Mr. Zobel's arguments, the Remand Orders did not require the ALJ to seek additional information or clarification from the medical sources, but rather said the ALJ may do so "as appropriate." R. 1445. Notably, Mr. Zobel does not argue that this is a case where the record reveals evidentiary gaps that result in unfairness or clear prejudice, or that the ALJ failed to develop a full and fair record. Indeed, Mr. Zobel specifically acknowledges that the evidence has been fully developed in this case when he asks the Court to reverse the Commissioner's decision without remand. ECF No. 19 at 29. I find no error in the ALJ's decision not to seek additional information or clarification regarding Mr. Zobel's physical limitations from Mr. Zobel's medical sources.

"As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited [ ]to whether or not substantial evidence in the record as a whole can support the ALJ's findings." *Garcia*, 2020 WL 8513834, at *8 (citations omitted). I find that there is substantial evidence in the record that supports the ALJ's RFC finding regarding Mr. Zobel's physical abilities. Therefore, I find that the ALJ's RFC finding regarding Mr. Zobel's physical abilities does not independently provide a basis for remand.

## IV.   Mr. Zobel's Request for an Award of Benefits

Mr. Zobel argues that the record evidence establishes disability without a doubt and requests reversal for an award of benefits, instead of remand. ECF No. 19 at 28-29. "Generally, a reversal with remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (citing *Walker v. Bowen*, 826 F.2d 996, 1001-02 (11th Cir. 1987)). However, the Court may remand the case for entry of an order awarding disability benefits "where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Shalala*, 985 F.2d 528 at 534 (citing *Bowen v. Heckler*, 748 F.2d 629, 635-36 (11th Cir. 1984)). In this case, Mr. Zobel has not established "without a doubt" that he was disabled during the period considered by the ALJ. Accordingly, I recommend that the case be reversed and remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## <u>REPORT AND RECOMMENDATION</u>

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment (ECF No. 19), **DENY** Defendant's Motion for Summary Judgment (ECF No. 24), and **REVERSE AND REMAND** the Commissioner's decision with instructions to the ALJ to weigh the opinion evidence regarding Mr. Zobel's reading limitations, including the opinions from Dr. Kishor and Dr. Lefkowitz, more fully articulate her reasons for crediting or discrediting Dr. Kishor's opinions, and determine whether any limitations that she finds supported in the opinion evidence impede Mr. Zobel's ability to perform the job of a laundry worker, general helper, or any other job that exists in significant numbers in the national economy.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **SEVEN (7) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 12th day of September 2023.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE